In re OGLE's Estate, TWADDELL's Appeal.

Credit allowed for an investment by a guardian in loan of a corporation owning coal lands and a canal, and chartered to carry on the business of mining, shipping, and carrying coal—the company being considered at the time to be safe, and the practice of investing therein common; though, in three years and ten months thereafter, they were obliged to suspend payment of interest, by reason of inundations, which destroyed their canal.

FROM the Orphans' Court of Philadelphia county.

*Feb.* 25. The appellant, as guardian of a minor, filed his account in the court below, from which it appeared that, in 1838, he had received from the estate of the father of the appellee about $4000, and in 1839, from that of Charles Ogle, a deceased brother, about $1000. He claimed a credit for a purchase, made December 31, 1838, of Lehigh 6 per cent. loan of 1848 at $101 25, amounting to $3200, and commissions on the whole estate at 5 per cent. On reference to an auditor, appellant stated, under oath, that he was solicited to accept the office by the family, the guardian of an elder brother being in difficulties; that he consented with reluctance, and made the investment under the belief it was the best in the market; that he would have preferred it to the State stock, or a mortgage, if he had had money of his own to invest. The interest was regularly paid until Oct. 21, 1841. That, at the time of the investment, the ward was advised of it, and made no objection, until

after he attained his majority. The transfer clerk of the company stated, there were on the books upwards of one hundred accounts of trustees, executors, and guardians holding the loan; that it was thought safe and desirable, as the interest was paid punctually every quarter; and it was believed by the officers that it would eventually prove good. At the time of this examination, it was selling at $38.

It was admitted that appellant held no stock in his own name, this certificate having been taken in trust for the ward.

The estate of Charles Ogle, from which $1000 was received, who died in 1838, amounted to about $3200. · Of this, $2000 was invested in this loan. · It was purchased by him in 1837. In a letter written shortly before his death, he expressed a desire that funds to meet his wants might be obtained from his late guardian, as he "would be extremely sorry to sell the Lehigh loan stock."

The court below, (PARSONS, J.,) declining to decide whether any other securities than those indicated in the act of 1832 could be resorted to, considered the decision in Nyce's estate (5 Watts and Serg. 254) ruled the case, adding: "We do not think the loan of the Lehigh Navigation Company could be considered that kind of security in which a prudent guardian or trustee would invest money. It was a private corporation; the stock was fluctuating, and, in its character, to say the least of it, was uncertain and questionable. Therefore, we think the auditor was right in refusing to allow the guardian a credit for it."

*Boone*, for appellant, argued that the rule in this State had always been to protect the trustee, when he acted in good faith and to the best of his judgment; but the court below seemed to think that the act of Assembly had limited the species of lawful investments. [*Per Curiam.*—The act does not make him liable for an investment beyond those mentioned; he must prove it was a safe investment.] Nyce's estate was under a will, and the decision is on the words of the special trust created; besides, that was in bank stock, while this is a loan to a corporation owning real property, on which its trade is founded. Lewin on Trusts, 307, 308; 3 Atk. 443; 1 Penna. Rep. 211. Here too it is shown that part of the funds had been previously invested by the donor in the same way.

*W. A. Porter*, contrà.—The legislature has established a rule; if it is departed from, it will require a decision in every case. The rule of the English chancery is settled, and requires no authori-

ties. The reason stated, as early as 3 Atk. 444, is exactly applicable. Nothing is trusted which may be wasted by the *lawful* acts of those on whom the value of the stock depends. All trading bodies, however secure, are excluded, because in the course of lawful traffic their estate may be lost. Precisely so here—a corporation trading in coal and transportation, the only object of its existence. Nyce's estate is much stronger, for there was the consent of the guardian; the corporation owned real estate, and was considered, by the most sagacious, perfectly secure.

The rule is settled, if the court would not relieve at the time the act was done, it will not interfere subsequently. Howe *v.* Dartmouth, 7 Ves. 137, where it is also said executors are expected to do what the court would order them to do. 10 Johns. 435; 2 Wend. 77; Willis on Trusts, 306, 309. There is not one of the almost numberless manufactories incorporated to the eastward which would not be held a good investment under the rule here contended for.

*March* 22. GIBSON, C. J.—The legislature evidently intended not to restrict the investments of guardians, executors, or trustees, to the securities designated in the act of 1832, or to require them, in all cases, without exception, to be made under the direction of the court, but to point out a course free from risk—not to interdict every other one. It would be inconvenient and burdensome to saddle every petty reinvestment of interest with the costs of a petition and the expense of a visit to the seat of justice, or virtually to prohibit an investment in vacation. If the statute had been enacted for the benefit of the owner of the money, it would have disappointed the framers of it; but it was made for the protection of the trustee, and not to entrap him. It is not intended here to say whether money may not in any case be safely invested on merely personal security. The question is a grave one; for on the decision of it may depend the very existence of pecuniary trusts. The English rule may answer in particular parts of the State; but it is extremely doubtful whether any unbending rule will answer in every part of it. The investment here was not on personal security, but in the loans of a great and flourishing corporation, the value of whose landed capital, to say nothing of its works, vastly exceeds the amount of its debts. The income from its coal mines and its canal is appropriated to payment of interest on its loans in the first instance; and the investment was consequently made, in substance, though not in form, on real security. The investment

in Nyce's appeal, which was thought below to rule the case, was made in the stock of a bank; and the history of banking, for thirty years, shows that it was essentially a hazardous one. Had the money, in the case before us, been invested in the stock of a company which cannot receive a dividend till the interest on its loans has been paid, or had its dividends then been suspended, the case might probably have presented a different aspect. That it has since been compelled to suspend its payments, has been occasioned by a dispensation of Providence which it was impossible to foresee or control. These are matters of history of which we are bound to take notice. · The returning prosperity of the company makes the decision of the question a matter of small importance to the parties to it; but it is of immense importance to parties beneficially interested in trusts, that the trustees be held responsible only for supine negligence. It is ordered, therefore, that credit be allowed, in the account, for cash and commission paid for the certificate of Lehigh loan; and that the account be reformed accordingly.

So decreed.